IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BRIDGET DENISE KOPEK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:19-CV-00287-DGK |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Bridget Kopek's application for supplemental security income under Title II of the Act, 42 U.S.C. §§ 401–434. The Administrative Law Judge ("ALJ") found Plaintiff had the severe impairments of fibromyalgia, obesity, pseudotumor cerebri, migraine, nonischemic cardiomyopathy and left bundle branch block, affective disorder, generalized anxiety disorder, bilateral trochanter bursitis, and status post repair of right hip labral tear, and did not retain the residual functional capacity ("RFC") to perform past work but could perform other work as a small-parts assembler, retail marker, or electronics subassembler.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her application for benefits on June 6, 2016, alleging a disability-onset date of December 8, 2015.  The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ.  The ALJ held a hearing and, on July 2, 2018, issued a decision finding Plaintiff was not disabled.  The Appeals Council denied Plaintiff's request for review on February 12, 2019, leaving the ALJ's decision as the Commissioner's final decision.  As Plaintiff has exhausted all administrative remedies, judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole and whether the ALJ committed any legal errors.  *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016).  Substantial evidence is less than a preponderance but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision.  *Id.*  In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it.  *Id.*  The court must "defer heavily" to the Commissioner's findings and conclusions.  *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close").  The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome.  *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

**Discussion**

The Commissioner follows a five-step evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). Plaintiff argues the ALJ erred at step four by crafting an RFC unsupported by substantial evidence, and at step five in leaving a conflict between the testifying vocational expert and the Dictionary of Occupational Titles ("DOT") unresolved. These arguments are unavailing.

I. **The ALJ's evaluation of Plaintiff's mental health is supported by substantial evidence.**

Plaintiff first complains that despite giving significant weight to the opinion of Margaret Sullivan, Ph.D., a state agency physician consultant, the ALJ did not align his RFC with her opinion that Plaintiff was capable of "low stress work." R. at 113. This argument is without merit.

Although Dr. Sullivan determined Plaintiff was moderately limited in her ability to understand and remember detailed instruction, concentrate for extended periods, and appropriately interact with the public and work around others without becoming distracted, she found Plaintiff was not limited in carrying out detailed instructions nor significantly limited in understanding and remembering short and simple instructions. R. at 119–20. The RFC is consistent with the specific findings in Dr. Sullivan's opinion: the ALJ limited Plaintiff to work involving only simple tasks

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 416.920(a)–(g). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

that apply simple information and limited her to only occasional, superficial contact with coworkers and no contact with the public. R. at 18. Substantial evidence supports the ALJ's incorporation of Dr. Sullivan's opinion into Plaintiff's RFC.

Next, Plaintiff complains that, despite recognizing her limitations in concentration, pace, and persistence, the ALJ did not specifically address those limitations in formulating her RFC. But the ALJ did not err because he limited Plaintiff to "simple tasks" and "apply[ing] simple information" which adequately recognizes Plaintiff's concentration, pace, and persistence limitations. R. at 18.

Plaintiff also argues the ALJ erred in giving partial weight to the opinion of Teresa Walker, M.D., her treating physician, without giving good reasons for doing so. Here, the ALJ gave Dr. Walker's opinion only partial weight because it was inconsistent with the medical record and her own treatment notes. These are good reasons for rejecting her opinion. *See Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016) (noting an ALJ may discount medical evidence where it is inconsistent with the doctor's own treatment notes or the medical record).

For example, Dr. Walker found that Plaintiff had a flat affect or depressed mood that Plaintiff believes the ALJ should have considered. R. at 480–82. The record, however, shows that Plaintiff's mental health was routinely observed to be within normal limits, and that Plaintiff herself described her depression and anxiety symptoms as mild and "stable." *See, e.g.*, R. at 852, 921, 1006–07, 1316. Dr. Walker also opined that Plaintiff had a marked restriction in daily living, extreme difficulties maintaining social functioning, and repeated episodes of deterioration or decompensation. R. at 480. However, Dr. Walker's treatment notes also consistently reveal Plaintiff had an appropriate demeanor and an intact memory, orientation, and attention. *See, e.g.*, R. at 457–58, 463, 469. When a conclusory medical opinion is not properly supported by the

medical record, an ALJ may discredit the conclusory statement. *Despain v. Berryhill*, 926 F.3d 1024, 1028 (8th Cir. 2019) ("An ALJ properly discredits [a medical report], though, if it is unsupported by the medical record.") (citation omitted). Moreover, Dr. Walker merely filled out a "checklist form" without citing any medical evidence and provided "little or no elaboration." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (citation omitted) (allowing the proper discounting of a treating physicians opinion when the format presented to the ALJ was a checklist form consisting of "nothing more than vague, conclusory statements").

Accordingly, the ALJ did not err when affording Dr. Walker's opinion only partial weight, despite her status as Plaintiff's treating physician. The ALJ's RFC formulation with regards to Plaintiff's mental impairments is supported by substantial evidence.

**II.     The ALJ's evaluation of Plaintiff's physical health is supported by substantial evidence.**

Plaintiff also argues the physical restrictions in the RFC are not supported by substantial evidence. First, Plaintiff argues the ALJ improperly gave significant weight to the opinion of Renu Debroy, M.D., a state agency physician who neither examined Plaintiff nor had an opportunity to review the full record. But an ALJ may consider the opinion of a state agency physician who gives an opinion supported by the record as a whole, even when that physician did not have access to subsequent diagnoses. *See Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) (finding no error in ALJ's consideration of opinion of physician review of incomplete record when considered "along with the medical evidence as a whole"). The ALJ was not in error when he considered Dr. Debroy's medical opinion because that opinion was supported by the record.

Next, Plaintiff contends the ALJ rejected the opinions of Stephen Ruhlman, M.D., Plaintiff's rheumatologist. She believes the ALJ failed to give adequate, legitimate reasons for rejecting Dr. Ruhlman's opinion, despite its consistency with the record of Plaintiff's functional

limitations. The ALJ afforded Dr. Ruhlman's opinion partial weight, to the extent it conformed with the RFC. In particular, the ALJ noted that Dr. Ruhlman gave an extreme limitation that was neither supported by the medical record nor internally consistent. R. at 20. For example, Dr. Ruhlman indicated Plaintiff was unable to work for even one hour each day, yet also indicated she could stand for one hour and sitting for two hours during a workday. R. at 705. Dr. Ruhlman's notes also appear to be based on Plaintiff's subjective complaints, and not independent medical evidence. When a medical opinion is based largely on the subjective complaints of a claimant, an ALJ may properly discount such an opinion. *Renstrom v. Astrue*, 680 F.3d 1057 (8th Cir. 2012) (citation omitted) (finding ALJ's decision to afford treating physician's opinion non-controlling weight appropriate when that opinion "was largely based on [claimant's] subjective complaints"). Thus, it was not improper for the ALJ to give Dr. Ruhlman's opinion only partial weight.

Plaintiff also argues the ALJ failed to give any consideration to the opinion of Michael Latteier, M.D., who treated Plaintiff for hip pain. Section 404.1527 of the Code of Federal Regulations requires an ALJ to consider every medical opinion received. Plaintiff alleges that because the ALJ failed to account for Dr. Latteier's opinion, this Court must remand for consideration. *See McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) (remanding for reconsideration when it was unclear what weight the ALJ afforded a medical opinion of a treating physician after including a detailed accounting of the opinion but missing a pertinent diagnosis).

But Plaintiff's reliance on *McCadney* is misplaced. Unlike *McCadney*, the ALJ did not give a detailed accounting for Dr. Latteier's specific medical opinion. The ALJ also did not miss any pertinent diagnoses from his report. *See* R. at 15, 19 (recognizing Plaintiff's history of hip pain and treatment for that pain consistent with Dr. Latteier's treatment). Dr. Latteier recommended Plaintiff avoid vigorous activities, R. at 1399, but Plaintiff alleges walking and

6

Case 4:19-cv-00287-DGK   Document 14   Filed 06/02/20   Page 6 of 10

frequent reaching, as set forth in her RFC, constitute vigorous activity (Doc. 13 at 7). The ALJ found Plaintiff could perform nothing more than light work which the Court finds does not constitute vigorous activity, despite Plaintiff's allegations to the contrary. R. at 18. The Court concludes that, while the ALJ erred by failing to specifically reference Dr. Latteier's opinion, that error is harmless[2] because the RFC is consistent with the opinion. Remand is therefore unnecessary.

Plaintiff also argues the ALJ "failed to assess the RFC on a function-by-function basis and erroneously assessed the exertional level first," a violation of SSR 96-8 (Doc. 9 at 48). Because of this error, Plaintiff alleges it is impossible to tell how the ALJ assessed her actual ability to sit, walk, stand, push, and pull. But this argument is meritless. The ALJ made numerous findings as to Plaintiff's specific functional limitations—including forbidding ladders, requiring only moderate noise, and allowing only occasional kneeling and crouching—when formulating Plaintiff's RFC. The ALJ did not err.

Plaintiff also alleges that her receipt of conservative treatment is not a valid reason to reject the opinions of treating physicians, including Dr. Ruhlman, or third parties. This is especially the case, Plaintiff contends, when, as here, the issue is one for which there are no surgical options. But Plaintiff reported conservative treatments being effective in managing her symptoms and was routinely given non-surgical recommendations, including increased exercise and improved diet, to treat fibromyalgia pain, hip pain, and her cardiac condition. Moreover, the ALJ did not exclusively rely on Plaintiff's conservative treatment, and, considered it as part of the record as a whole. Thus, the ALJ's findings are supported by substantial evidence.

---

[2] An error is harmless when there is no indication the ALJ would have decided differently based on the new information. *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (citing *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008)).

Finally, Plaintiff alleges the ALJ erred when he found that fibromyalgia was a severe impairment in step two but did not consider the impairment in formulating her RFC (Doc. 9 at 49). Plaintiff contends that the very existence of her fibromyalgia—which causes variability in symptoms and ability to perform limited household chores and activities—utterly precludes her ability to work. *Id.* While fibromyalgia has the potential to be disabling, the ALJ did not err in this case by finding it did not cause Plaintiff to be disabled. Plaintiff cites *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004) for the proposition that merely looking at a claimant's daily activities cannot constitute substantial evidence of a lack of disability in a fibromyalgia case. Here, however, the ALJ did not only consider Plaintiff's daily activities, but also the medical evidence and opinions as to the extent of Plaintiff's limitations. Unlike *Forehand*, where Plaintiff's subjective complaints were aligned with "the great majority of reports of her physicians," here the record is not so overwhelming. *Id*. Instead, the record shows many reports evaluating Plaintiff's mental abilities as within the normal range. *See, e.g.*, R. at 852, 921, 1006–07, 1316. And the ALJ took into consideration the limitations in Plaintiff's ability to stand, walk, crouch, tolerate noise, and interact with others when he formulated her RFC. Thus, substantial evidence supports the ALJ's determination that Plaintiff's fibromyalgia was not so severe as to require a finding of disability.

### III. The ALJ met his burden at step five.

Plaintiff argues that because the ALJ's formulation of Plaintiff's RFC was flawed, his hypothetical question to the VE was necessarily flawed (Doc. 9 at 41). But this Court concluded that the RFC was supported by substantial evidence and so this argument is without merit.

Plaintiff also claims the ALJ failed to meet his burden at step five because the jobs identified by the testifying vocational expert ("VE")—retail marker, electronics subassembler, and

small-parts assembler—do not meet the limitations in the RFC. These allegations of error, which are addressed in turn, are uniformly without merit.

### A. Any error in finding Plaintiff could perform work as a small-parts assembler is harmless.

First, Plaintiff argues the job of a small-parts assembler is inconsistent with the RFC. As an initial matter, Plaintiff's argument that the RFC's limitation that Plaintiff have no more than "occasional, superficial contact with co-workers and supervisors" precludes work as a small-parts assembler because that work requires being part of an assembly group is without merit. The Dictionary of Occupational Titles ("DOT") reveals that working in an assembly group means "assembling one or two specific parts and passing unit to another worker." DOT 706.684-022. Such work does not involve more than superficial contact with co-workers, and thus, is not precluded by Plaintiff's RFC.

Plaintiff's RFC, however, also limits her to work with moderate noise. Because a small-parts assembler is classified as a level-four loud job, DOT 706.684-022 (identifying noise level as "loud"), Plaintiff is precluded from this work. Nevertheless, this is harmless error because Plaintiff can still perform other work as a retail marker and electronics subassembler. *See Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014) (citation omitted) ("one mistaken recommendation does not devalue the rest of her opinion.").

### B. A subassembler and retail marker limit Plaintiff from working with hazards.

Next, Plaintiff argues that because her RFC dictates she must "avoid all hazards," R. at 18, she cannot perform any of the three occupations identified by the VE (Doc. 9 at 39). This Court has already determined Plaintiff cannot perform work as a small-parts assembler, it considers this argument only as it pertains to a subassembler and retail marker.

Hazards include "moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals." SSR 96-9P, 1996 WL 374185 at *9 (July 2, 1996). In considering the jobs of subassembler and retail marker as found in the DOT, neither job involves any exposure to the hazards listed in SSR 96-9P. DOT 729.684-054 (listing as "Not Present – Activity or condition does not exist" every hazard listed in SST 96-9P); DOT 209.587-034 (same). Thus, the ALJ's conclusion of work available to Plaintiff despite her limitations as stated in the RFC is supported by substantial evidence. The ALJ met his burden at step five.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date: June 2, 2020           /s/ Greg Kays
                             GREG KAYS, JUDGE
                             UNITED STATES DISTRICT COURT